Would you mind just shutting the door for us, please? Thank you. Thank you. All right, our next case is Farmer v. United States of America. We'll hear first from Mr. Huntley. Thank you, Your Honor. Good morning, Your Honors. My name is Willie Huntley, and I have the pleasure of representing the relators today. As you all may well be aware, I did not participate in the drafting of the brief that was presented to the court. I was involved in the early stages when it was before the United States District Court in the Southern District of Alabama. I have since been retained again to come and argue this matter to the court today. My clients, as I stated, are the relators, Murray Farmer, who is in the courtroom today, John McAvoy, and Marco Zavala. Murray worked in a company located in Honduras during this time period, and Marco and John were employees of USAID. Mother Nature created a tremendous problem in Central America. Mother Nature sent the fury of Hurricane Mitch back in 1998. It struck the Hondurans with such a tremendous force that the Hondurans had to call out, make a worldwide call and request for aid. The United States responded. The Congress passed emergency legislation to provide $250 million to aid Honduras in its recovery. There was a request put out for bids. DRC, one of the companies, made that bid and was accepted. They went to Honduras and did the work. Once the work was completed, they did not get paid, which is the basis of this entire case. As you are all aware, there was an allegation in this case that was made against several elected officials in Honduras. In October 2017, the relators in this case filed a lawsuit making those same allegations. In October, they were asked to proceed to not intervene and allow the action to proceed. Now that's a significant event because according to the False Claims Act, once the government makes that election, the relators, and I quote from that act, shall have the right to conduct the action. In October 2019, let me go back, in July of 2019, the relators filed an amended complaint. In that amended complaint, they made an allegation against several USAID employees alleging that they were involved in corruption with the Honduran government. In October 2019, the government filed its motion to dismiss. Now the situation has arisen where as the case progressed and the motion to dismiss was made, it was argued at that particular time. But the real issue involved in the case was whether the government had standing to file the motion to dismiss. At that particular point, the United States District Court decided that the government did and eventually granted the government's request. The government could have moved to intervene. Yes, that is correct. They had to show cause. That's correct, Your Honor, and they failed to do that. Then it didn't run. What the government did is they filed a motion to dismiss and once they got in the court, they in effect were granted a leave to intervene. That's the operation. That's what happened. That's how it's supposed to operate. No, no, it's supposed to operate. You file the motion. The government files a motion for leave to intervene and there's a cause determination. So they convinced the court they have cause to intervene, as I understand the law. I'm not arguing against your point. I'm trying to understand. Then the court decides to let them come in. Then the government could later on move to dismiss the case. Judge, one of the things they didn't do is they didn't file a motion to intervene. I understand that. The only thing they filed was a motion to dismiss. Thank you. The court treated it as if they had granted the government leave to intervene. Judge, if you look at the order that was issued by the United States District Judge as a result of this case, there is nothing in there that even remotely says that there was a, the court could not have granted the motion to dismiss unless they were in the case. That's correct, Judge. But one of the problems was they were never in the case because they did not file a motion to intervene as a party. That creates the entire problem. That goes to the issue of jurisdiction because they were not a party to litigation. And because they were not a party, they were a real party in interest, but they were not a party. And simply filing that motion to dismiss without the motion to intervene is what has created the problem. Can I ask you a question about that? So in the Seventh Circuit case, which name I will not attempt to pronounce. I was going to butcher it. Okay, we'll just call it the Seventh Circuit case. In the Seventh Circuit case, the Seventh Circuit construed the motion to dismiss there as a motion to intervene first, as sort of an inherent motion to intervene or an implied motion to intervene. Why is that not the right answer? And Judge, I think that is the right answer. The only problem is it didn't happen in this case. There was just a motion to dismiss. The court in its final order did not make that statement at all. That I'm going to treat this motion to dismiss as a motion to intervene and then grant it and end up granting prejudice or issuing it with prejudice to the relators and without prejudice to the government. So if there had been an express motion to intervene, let's just assume for the moment that there was also a motion to intervene, what is your argument as to why there was error in dismissing it? Assuming that there was a motion to intervene, the standard is then different because then they have to- Good cause, right? That's correct, Your Honor. Okay, but why were the reasons that the government offered not good cause? In other words, it might create diplomatic problems that it could be construed as a diplomatic state on the part of the United States as to how it was treating Honduras or a part or perhaps a part of the Honduran government. Why are those not good cause reasons? Judge, I'm trying to think of the word that I can best use to describe it other than we don't feel like those were adequate reasons. If you look at the case, if you look at what was said at the hearing, the attorney general that was representing the government at the time made the statement that this case by these relators was without merit, but they still allowed the case to proceed forward without making any kind of intervention. Now, if they would have intervened at the beginning when they had that opportunity, they could have then said, now we're going to file a motion to dismiss because your case lacks merit. But at the time that the government moved to dismiss, didn't it say that it was moving to dismiss for a few different reasons, including the fact that it was concerned about diplomatic relations with Honduras and what pursuing this particular claim might do to those relations? Well, Judge, that flies in the face of reason, what the government was saying at the time, because the complaint, the initial complaint was already suing Honduran officials, from the president to the attorney general to several high-ranking Honduran employees or high-ranking officials. And it's kind of unreal to believe that if they thought the case didn't have any merit, that they would let it go, believing that this may have some impact on relations with the Honduras. And I hear what you're saying, but there's also a history here, right? I mean, wasn't there a case in the District of Columbia where the federal court found that the entity was not a part of the Honduran government? That's correct, John, and that was called FISH. And that was, in fact, one of the findings that the U.S. District Court made in a separate proceeding, because the issue was, which is one of our claims for fraud, whether or not this FISH was a part of the government. In order to get the contract or to get the grant from the USAID, it had to be with a foreign government. According to that particular order from the District Court, they weren't. And I think they had two experts that they brought in and said that they're not part, FISH was not part of the Honduran government. And therein lies the gist of the fraud in this particular case. All right. May I ask a question before we sit down? Had there been a parallel criminal proceeding, the statute gives the government right to ask the court to stay discovery, right? Yes, sir. Would the government have to intervene first before they ask the court to stay discovery? I think because if there was a criminal prosecution involved, the statute, the False Claims Act statute provides a remedy for that, a way to take care of that problem without interfering with the case that the relators have filed and without interfering with the case, whether it be a criminal case or a civil case, that the government may have wanted to pursue. Well, the False Claim Act gives the government the right to ask the judge in the relator's case to stay discovery, right? Yes, sir. Okay. Do they have to intervene before they ask the court to do that? Judge, my answer to that would be no. Okay. I think that that could be taken care of by some other administrative remedy. And I think the statute, and I haven't looked at it. Let me stop you there. They're even entitled to have an in-camera hearing. Yes, sir. Okay. Do they have to intervene before they can have the in-camera hearing? Judge, my answer to that would be no. I think that if a criminal case significant criminal case or any type of criminal case was being pursued by the government, that they, the Department of Justice, would not be required to file any kind of intervention. So they have the right to do certain proceedings without intervening formally first, right? That would be my reading of the statute, Your Honor. Okay. Thank you, counsel. And you've reserved five minutes for rebuttal. We'll hear from Ms. Carroll. Sorry. That's all right. Might have to lift it up a little because the gravity might cause it to fall off. Thank you. There we go. Thank you, Your Honor. Good morning. May it please the court. Sarah Carroll on behalf of the United States. A relator that filed the Ketam suit under the False Claims Act sues in the name of the United States to remedy an injury to the United States. Here, after reviewing the relator's allegations, the United States determined that it would harm interests of the United States for this suit to proceed. So the government exercised its statutory right to dismiss the suit under Section 3730C2A. The relators do not argue about the proper standard for granting such a motion. The district court held that the motion should be granted either under the D.C. Circuit's unfettered discretion standard or under the Ninth and Tenth Circuit's rational relations standard. The relators don't dispute that that is the case. They instead focus on an argument that the government was required to intervene before it was able to move to dismiss. But... Well, my first answer, Your Honor, would be that this court already considered and addressed that question in its Everglades decision. So Everglades, to be clear, arose in the settlement context under the neighboring provision 3730C2B. We're talking about C2A here, which is about dismissal. But the reasoning would apply with equal force here. The reasoning applies equally here. As the court made clear in its opinion, the basic reasoning is that under 3730B2, that provision says the government may elect to intervene and proceed with the action. But when the government is dismissing or settling the action, it is not proceeding with the action. It's ending the action. This court also noted in Everglades that C2A and C2B in their statutory language are not conditioned on the government intervening. By contrast, C1 says if the government proceeds with the action, it shall have various rights. So if this court were to accept the relator's argument, it would have to reach a conclusion that would be irreconcilable with Everglades. And again, I recognize that Everglades is about settlement, not dismissal, but the reasoning is exactly the same. And it would be... I think courts don't lightly go into issue decisions that are squarely contrary to recent circuit precedent. Let me ask you a question. I think you're probably right about Everglades, just speaking for myself. And not that this is necessarily the forum in which to do it, because if we're bound by Everglades, we're bound by Everglades. But do you think there's a... Well, let me ask it to you this way. Do you think that the Seventh Circuit analysis here, which requires that you construe the motion to dismiss as also including a motion to intervene, what do you think... Do you think there are any problems with that analysis? We think that... Well, we think that this court's conclusion in Everglades that the United States doesn't need to intervene is the correct conclusion. So I think we don't think that the Seventh and recently Third Circuit, we sent the court a 28-day letter about the Polanski decision, which kind of mirrors the Seventh Circuit decision. We don't think that they got that right. But I think that as the DC Circuit said in Swift, the question whether we have to intervene before moving to dismiss is kind of an academic one, because as I think your honor noted when speaking with my colleague, the Seventh Circuit and the Third Circuit held that a motion to dismiss should be construed as including a motion to intervene. Indeed, in this case, before the district court, government counsel asked that the district court construe the motion to dismiss as including a motion to intervene if the district court thought that was necessary. That's on page 24 of the transcript of the motion to dismiss hearing. And I think that a government determination that a QUTAM suit will harm the United States and that government needs to step in and take control of the case and end it will kind of inherently constitute good cause. The Seventh and Third Circuits have talked about what good cause means. They quoted Black's Law Dictionary, which defines it as a legally sufficient reason. That's not the highest bar that's ever existed. And I think in a case where the government has decided that a QUTAM suit should not proceed because it's harming the United States, there will be good cause. And in this case, there certainly were numerous good reasons that the government determined that this case would harm the government if it went forward. There are the diplomatic concerns that you noted, Judge Rosenbaum. There was the determination that the relator's allegations just lacked merit because USAID understood the status of this Honduran agency and entered this arrangement knowing what was going on. My understanding is USAID has agency. The relators might think that USAID reached the wrong conclusion, but that's not a False Claims Act suit. To succeed on a False Claims Act suit, a relator has to show that, you know, the government was defrauded. But we don't think there was a false statement here. We also think that relators wouldn't be able to satisfy the False Claims Act's materiality requirement. So we don't think that the suit would result in a recovery. But on the other balance, we think it would impose significant costs on the government. The ordinary costs of monitoring a key TAM suit, even in which we don't intervene, which lots of courts have recognized alone as a rational reason to dismiss a case applying the Sequoia-Orange Rational Relations Standard. But here, in addition, the relator's decision to sue USAID employees in their individual capacities created the possibility of additional, very significant costs because government employees who are sued in their personal capacities have a right to request representation by the government. But of course, the Department of Justice represents the United States in its role as a real party and interest in a False Claims Act suit. So there would potentially be a conflict of interest that could result in the government paying for private counsel for these USAID employees in this suit that we have determined lacks merit. So I think that the district court correctly held that we satisfy any potential standard for evaluating the merits of the dismissal motion. The court correctly applied this court's decision in Everglades in concluding that we weren't required to intervene. But even if one thought that an intervention motion should be required before the government moves to dismiss, we had ample good cause to intervene so that we could end this suit. I'm happy to answer any other questions the court might have. Thank you, counsel. All right, we'll hear again from Mr. Huntley. Thank you, Your Honor. I would just like to emphasize a case that I believe that the district court overlooked, which is the Eisenstein case. I think that case is significant because of the principle that is set down as to how to establish whether if a party is involved. It also has some implications as far as jurisdiction because they didn't intervene. And as we all know, the only way a entity can go from being a real party in interest to a party is to file the appropriate motion. No such motion to intervene was filed in this particular case. I'm sorry, let me ask you this about that. With respect to Eisenstein, that was decided by the Supreme Court in 2009, and our Everglades case was decided by the 11th Circuit in 2019. And there we said the government does not need to move to intervene when there's a settlement going on, if it wants to, you know, participate in that. And the reason, the reasoning for that was that there wasn't an ongoing, they didn't want to be involved in an ongoing proceeding. The government wanted to bring it to an end. And here the government wants to bring it to an end again and not be involved in an ongoing proceeding. Why doesn't Everglades control this? And if Everglades does control this, then don't we, I mean, isn't Eisenstein not really a consideration because Eisenstein was decided 10 years earlier and we presume that the 11th Circuit is aware of the Supreme Court case law when it decides these kinds of issues? Judge, I think the Everglades case does not apply, factually. In this, in that particular case, there is a substantial difference. There was, there was actual, there was actually a trial. The government elected not to get involved. There was a trial put on by the relators. The relators won. They didn't win as much as they thought they were going to win. And during that interim, that's when the government comes around and they said, we're going to settle it. And they settled the case and they settled it for more than what the relators were able to achieve during trial. And I think that is the clear distinction as it relates to Everglades. I don't think the court should even consider Everglades in reaching any type of determination or assessing. No, no, I'm sorry. I just want to make sure I'm understanding how you're distinguishing it. What is the significance of the fact that the government settled for more in the analysis, which is that this wasn't an ongoing proceeding? I'm not sure I'm understanding why it matters that the government settled for more to take it out of the reasoning of Everglades. And I might just be missing something. So I want to give you a chance to explain that. No motion to intervene was filed other than the special provision under the False Claims Act that would allow the government to come in and settle the is the standard for settling that particular case. And the reason for the government taking that action, because there's a hearing and the court decides that the settlement was fair and reasonable. That's the only issue. That makes this case, that Everglades case, substantially different. And that's where the Eisenstein case would come in. Now the district court judge mentioned Eisenstein, but there was never any mention in the order that was finally issued with Eisenstein at all. And I think the judge may have been under the impression at some point in time that Eisenstein was the case, but because Everglades had been decided in the 11th Circuit, she was bound to follow that decision. And I think if you look at the progress, because in this case, we never even came close to getting a trial. There was never any discovery. We never even completed serving all the defendants. We served some, but we hadn't served any defendant in the Honduras because of a lot of other problems. But that's where the distinction comes in between those two cases and the rest of our case. And I think there was a significant statement made about saying that, yes, we'd like the court during the hearing to construe this as a motion to intervene. The judge never did that, never ordered that in the order. The judge only said the motion to dismiss is granted. Now I think it would have been a little bit different if the judge would have said, yes, at this particular point, I think that I'm going to construe this as a motion to intervene and as a motion to dismiss and grant the motion to intervene and then grant the motion to dismiss. That didn't happen in this particular case. And I think that's the significant issue here. And we would ask the court, ask this court to send it back to the district court. Well, normally a judge might ask the government at the hearing, why didn't you move to intervene? Well, I mean, there is a forecaused element in the motion to intervene, which implies some kind of inquiry. And you're in the bosom of the district court. There's a case ongoing. And so the court wants to hear from the parties. I mean, if I were the district judge, I'd ask the government, why didn't you move for leave to intervene? And if I recall correctly, your honor, I don't think that question was ever posed. No, it wasn't asked. And so the court just construed the motion as a motion for leave to intervene. And if the court did, and I may have missed it. My major concern is the institutional one. You've got a district judge presiding over a case that's going along, just hypothetical case. Say there's discovery and this, that, and the other thing, a trial date. And now the government wants to get into the act. And that's kind of disrupting to the district court's management of the case. This is a management problem, mostly. And the government has some rights. So, and that's why this show cause. And of course, if a judge dismissed the case, if you draw the analogy to Rule 41, when a judge dismisses a case after the issues are joined and you're in the middle of discovery, for example, a court can condition the dismissal on lots of things, like paying the plaintiff's costs or just all sorts of things. That's my institutional approach to this kind of a problem. That's all. Well, one of the things that gets lost in this particular case is this specific right that says the person bringing the actions shall have, shall have the right to conduct the action. When they come in and intervene or don't intervene, that's taken away that right. And then the question becomes, what happens to that right? Why was that right trampled on? That right was never given any effect whatsoever. And on that basis, we think the case should be remanded. Thank you very much, counsel. I just keep dropping everything over here. Another Smith. Yes. So. All right.